STATE OF NORTH CAROLINA v. JAMES EARL COWARD

No. 9

(Filed 16 March 1979)

1. **Criminal Law § 111.1— instructions—reading charge in indictment for which defendant was not on trial—harmless error**

    The trial court in a prosecution for first degree burglary erred in reading to the jury a portion of the bill of indictment charging felonious larceny when defendant had not been arraigned and was not being tried on the larceny charge. However, such error was not prejudicial where it clearly appears that defendant, defense counsel, the court and the jury knew at all stages of the trial that defendant was not being tried for felonious larceny, and the trial judge was required to explain and relate the crime of larceny or intent to commit larceny to the charge of first degree burglary.

2. **Criminal Law § 114.2— instructions—reference to "this meat"—no assumption of fact of identification**

    In a first degree burglary prosecution in which the evidence tended to show that a quantity of meat had been stolen from the victim's freezer, the trial judge did not assume the fact of identification of the stolen meat by his instruction that the State offered testimony that defendant offered to sell a quantity of meat to a neighbor who declined to buy it and that "this meat" was left in the clothes basket of another neighbor and was ultimately returned to the burglary victim.

3. **Criminal Law § 112.4— refusal to instruct on circumstantial evidence—absence of timely request**

　　Where no special request for instructions on circumstantial evidence was timely made, the trial judge's refusal to charge on the probative value of circumstantial evidence was within his sound discretion and not error.

4. **Constitutional Law § 30; Bills of Discovery § 6; Criminal Law § 128— denial of discovery motion—refusal to set aside verdict—due process**

　　The trial court did not abuse its discretion in the denial of defendant's motion to set aside the verdict because defendant's pretrial motion for discovery had been denied where the prosecutor advised the court that he did not have most of the items requested, the State did not offer any in-custody, incriminating statement by defendant, the district attorney exceeded statutory requirements in agreeing to furnish defense counsel a list of the State's witnesses, and the court stated for the record that any evidence offered at trial which was within the purview of the motion for discovery would be excluded upon timely motion. Furthermore, the denial of defendant's motion to set aside the verdict did not amount to a denial of due process where there was nothing in the record indicating that the State suppressed any evidence favorable to defendant.

APPEAL by defendant from *Tillery, J.,* at the 5 June 1978 Session of PITT County Superior Court. This case was docketed and argued as No. 130 at the Fall Term 1978.

Defendant was charged in a bill of indictment with first degree burglary and felonious larceny. He was arraigned only on the burglary charge and entered a plea of not guilty.

The State offered evidence tending to show that on 8 April 1978 Mamie Johnson and her five children lived at 1504-B Fleming Street in Greenville, North Carolina. Her daughter, Effie Cooper, aged 16 came home at about 1:30 a.m. on the morning of 8 April 1978, and after checking the doors and windows and ascertaining that they were closed, she retired, leaving a light burning in the hall.

Lester Johnson, the 15 year old son of Mamie Johnson, testified that he was awakened at about 4:30 a.m. on the morning of 8 April 1978 because he was cold and at that time observed defendant James Earl Coward standing in the lighted hallway. Defendant went down the hall and came back and sat down on Lester's sister's bed for a moment. As he was leaving, defendant said he was going to use the bathroom. Shortly thereafter, Lester observed defendant peering into the window of the bedroom.

State v. Coward

Defendant then left the premises. Lester observed that the screen in the kitchen window was torn and bent and that the bedroom window was open. He had known defendant for a period of about two years.

Mamie Johnson gave evidence to the effect that upon being awakened by her children in the early morning hours of 8 April 1978, she immediately called the police and upon their arrival told them what had occurred. She also stated that she checked her deep freeze and found that some meat was missing.

Lee Whichard testified that he saw defendant at the home of Lillie Mae Mercer between 7:30 and 8:00 o'clock on the morning of 8 April 1978, and at that time, defendant tried to sell him some meat. The meat was frozen and had been located under some clothes in a tub on Lillie Mae's back porch. The witness said that he refused to purchase the meat.

There was evidence that the meat was carried to the home of Mamie Johnson by a man by the name of Isaac Waters and Mamie Johnson identified this meat as the meat which was missing from her deep freeze.

Officer Best testified that he arrested defendant on the morning of 8 April 1978. He also gave testimony which tended to corroborate the testimony of State's witnesses Effie Cooper and Lester Johnson.

Defendant testified and denied that he entered the home of Mamie Johnson. He offered other testimony to support his defense of alibi, and he also offered evidence which tended to contradict State's witness Lester Johnson's testimony concerning the clothes defendant was wearing during the early morning hours of 8 April 1978.

The jury returned a verdict of guilty, and defendant appealed from judgment imposing a sentence of life imprisonment.

*Rufus L. Edmisten, Attorney General, by James L. Stuart, Assistant Attorney General, for the State.*

*Willis A. Talton for defendant appellant.*

BRANCH, Justice.

[1] Defendant argues that the trial judge erred by reading to the jury that portion of the bill of indictment which charged felonious larceny.

After reading that part of the indictment which charged burglary, the trial judge continued:

> . . . And the jurors aforesaid, upon their oath aforesaid, do further present that the said James Earl Coward, late of the County of Pitt, on the 8th day of April, 1978 between 4:45 a.m. and 5:45 a.m., in the night of the same day, with force and arms at and in the county aforesaid, of the value of Twenty Dollars of the goods and chattels of Mamie Johnson in the dwelling house of Mamie Johnson, then and there being found, then and there feloniously and burglariously did steal, take and carry away one package of stew beef . . . .

The purpose of a charge is to apply the law to the evidence so as to assist the jury in understanding the case in order that they might return a correct verdict. 4 Strong's North Carolina Index 3d, *Criminal Law*, Section 111, page 564; *State v. Biggs*, 224 N.C. 722, 32 S.E. 2d 352 (1944). Obviously, it would not assist the jury in understanding a case to read to them a bill of indictment charging a crime for which defendant is not being tried. We, therefore, conclude that it was error to read that part of the indictment which charged defendant with felonious larceny. Under the particular circumstances of this case, however, we do not find this error to be prejudicial. Here defendant was arraigned only upon the burglary charge. When the case was called for trial, the district attorney (presumably in the presence of the prospective jurors) stated:

> James Earl Coward, come around please. This is Case No. 3 on the trial calendar, James Earl Coward, 78-CRS-6050, and he is represented by Mr. Willis A. Talton and stands charged in a bill of indictment with the crime of first degree burglary. He's previously been arriagned and entered a plea of not guilty.

Except for the erroneous reading from the bill of indictment, the entire charge presented to the jury the possible verdicts of

first degree burglary and the lesser included offenses of felonious breaking and entering and nonfelonious breaking and entering. The only other time that the word larceny was mentioned to the jury was when the trial judge defined the crime and explained that it was necessary for the State to prove that at the time of the breaking and entering defendant intended to commit the offense of larceny. Further, after defining and explaining the possible verdicts, the trial judge charged:

> Members of the jury, again, depending upon how you find the facts, there are four possible verdicts which you may return. You may find the defendant guilty of burglary in the first degree, or you may find him guilty of felonious breaking or entering, or you may find him guilty of nonfelonious breaking or entering, or you may find him not guilty.

Upon return of the verdict, defendant was sentenced only upon the charge of first degree burglary. Therefore, it clearly appears that at all stages of the trial, defendant, defense counsel, the court and most importantly the jury knew that defendant was not being tried for felonious larceny. Further, to correctly charge in this case, the trial judge was required to relate and explain the crime of larceny or intent to commit larceny to the charge of burglary in the first degree. Under these circumstances, we are unable to perceive that the apparently inadvertent error of the trial judge in reading the charge of larceny to the jury misled the jury or affected the verdict returned.

[2] Defendant assigns as error the trial judge's instructions concerning the meat allegedly stolen from Mamie Johnson.

The portion of the charge which defendant attacks is as follows:

> . . . The State has further offered evidence which in substance tends to show . . . that a certain quantity of meats was gone from the deep freezer. That some time thereafter, the defendant offered to sell a certain quantity of meat to a neighbor who declined to buy it and that this meat was left in the clothes basket of another neighbor and was ultimately returned to Mamie Johnson, who looked at it and identified it as being the same meat that she was missing. . . .

It is defendant's position that by this instruction the trial judge assumed the fact of identification which was a matter solely for the jury. He strongly relies upon the case of *State v. Bertha,* 4 N.C. App. 422, 167 S.E. 2d 33 (1969). In *Bertha,* defendant was charged with felonious larceny of certain property including a television set. In recapitulating the evidence, the trial judge said:

> . . . [B]ut as I recall the testimony of Ella Mae Blakeney, she saw these two defendants standing in bushes at the rear of the apartment house with *this* television set and the iron in their possession and that she saw them take it *to* this abandoned house.

> Now, members of the jury, if you find those to be the facts from the evidence and beyond a reasonable doubt, the court instructs you that would constitute recent possession in this case. (Emphasis added.)

One of the crucial issues in *Bertha* was whether the television set which the witness Blakeney saw in defendant's hands was in fact the stolen television. In finding error in the trial judge's instruction, the Court of Appeals reasoned that the challenged instruction by the trial judge was not supported by the evidence and did in fact establish that the television set seen in defendant's hands was the stolen property.

Instant case differs from *Bertha* in that here the trial judge correctly restated the testimony of the witnesses. His use of the words "this meat" was a reference to the meat which the evidence shows defendant tried to sell and which was later identified by the witness Mamie Johnson as meat which was missing from her freezer locker. Thus, there was no misstatement of fact or assumption of fact in the challenged instruction. This assignment of error is overruled.

[3] Defendant's next assignment of error is that the trial judge erred by failing to charge the jury on the probative value of circumstantial evidence as related to the crime of larceny.

When the State relies in whole or in part on circumstantial evidence, a general and correct charge as to the burden of proof is sufficient and the court is not required to charge on circumstantial evidence absent a special request therefor. 4 Strong's North

Carolina Index 3d, *Criminal Law*, Section 112.4, pages 574-575; *State v. Branch*, 288 N.C. 514, 220 S.E. 2d 495 (1975), *cert. denied*, 433 U.S. 907.

G.S. 1-181, in part, provides:

(a) Requests for special instructions to the jury must be —

(1) In writing,

(2) Entitled in the cause, and

(3) Signed by counsel submitting them.

(b) Such requests for special instructions must be submitted to the trial judge before the judge's charge to the jury is begun. However, the judge may, in his discretion, consider such requests regardless of the time they are made.

*See also*, G.S. 1A-1, Rule 51(b).

In instant case, just before the trial judge completed his charge, the record discloses the following:

Anything further the defendant would have the Court charge on? Or the State?

(Whispered to the Court Reporter, out of the hearing of the jurors by Mr. Talton: I asked that he charge more specifically on larceny indicating that it must be shown that the defendant committed larceny in the case, and that circumstantial evidence should be explained as to linking the meats described to the defendant's actions. He ruled against me, and I except.)

Obviously, no special request for instructions on circumstantial evidence was timely made, and, therefore, the trial court's refusal to so charge was within his sound discretion and was not error. *State v. Broome*, 268 N.C. 298, 150 S.E. 2d 416 (1966); *State v. Spillman*, 210 N.C. 271, 186 S.E. 322 (1936).

In connection with this assignment of error, we think it proper to further note that it is not incumbent on the State to prove the actual commission of the felony, which the indictment charged was intended by the defendant at the time of the breaking and entering, in order to sustain a conviction of burglary. *State v.*

*Bell*, 285 N.C. 746, 208 S.E. 2d 506 (1974). Thus, the fallacy in the argument which defendant attempted to present by this assignment of error is that since the State did not have to prove the actual commission of the crime of larceny, there was no necessity for an instruction on circumstantial evidence as related to larceny. We further note that the trial judge generally and correctly charged on the burden of proof.

This assignment of error is overruled.

[4]   Finally, defendant assigns as error the denial of his motion to set the verdict aside.

On 6 June 1978, defendant filed the following motion for discovery:

NOW COMES the defendant, by and through his attorney, pursuant to G.S. 15A-902(a), and moves the Court that an Order issue directing the State to provide the following items which are subject to discovery:

(a) All written or recorded statements made by defendant, as provided by G.S. 15A-903(a)(1).

(b) All oral statements made by the defendant which the State intends to offer in evidence, as provided by G.S. 15A-903(2). [sic].

(c) A copy of any prior criminal record of the defendant available to the District Attorney, as provided in G.S. 15A-903(c).

(d) The names of all witnesses the State intends to use.

(e) Any physical evidence, or a sample of it, available to the District Attorney.

(f) Any and all statements, written or recorded, made by any witnesses the State intends to use.

In support of this motion the defendant shows unto the Court that this defendant in due time served a request for voluntary discovery on the State, to which no response has been received.

WHEREFORE, defendant moves the Court that an Order issue directing the State to provide discovery of the items

described above, and for such other relief as to the Court may seem just and proper.

Judge Tillery heard this motion on 6 June 1978 and stated for the record that the district attorney had advised him that he had none of the items requested by Sections (a), (b), (c) and (e) of the motion. Further that the district attorney was willing at that time to supply the names of the witnesses he proposed to offer. The court stated for the record that should any evidence be offered at trial within the purview of defendant's motion, it would be excluded upon timely motion.

We note that the State did not offer a confession or an in custody, inculpatory statement by defendant and that the district attorney exceeded the requirements of the statute when he agreed to furnish defense counsel a list of the State's witnesses. *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977).

A motion to set aside a verdict is addressed to the trial judge's sound discretion, and his ruling will not be disturbed absent a showing of abuse of that discretion. *State v. Smith, supra.* Defendant has failed to show any abuse of discretion on the part of Judge Tillery in denying his motion to set aside the verdict.

By this assignment of error, defendant also argues that Judge Tillery's denial of his motion to set aside the verdict amounted to a denial of his constitutional right of due process. In support of this position, defendant cites *State v. Tatum*, 291 N.C. 73, 229 S.E. 2d 562 (1976), where we quoted language from *Brady v. Maryland*, 373 U.S. 83, 10 L.Ed. 2d 215, 83 S.Ct. 1194, to the effect that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. . . ." We find nothing in this record indicating that the State suppressed such evidence.

The trial judge correctly denied defendant's motion to set aside the verdict.

Our careful examination of this record discloses no prejudicial error. However, in our opinion the facts of this case warrant review by the Executive Branch for possible reduction of sentence.

No error.